UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH A CERTAIN ACCOUNT THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC | Case No. 3:19mj 802 (RMS)<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Michael Morrison, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises controlled by Google LLC, an email provider headquartered at 1600 Amphitheatre Parkway, Mountain View, California.  The information to be searched is described in the following paragraphs and in Attachment A.  The information includes content associated with the email account joyceclowser@gmail.com (the "Subject Account") which is believed to be associated with a scheme or schemes to obtain access to bank accounts belonging to a school district within the State of Connecticut.

2.      This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) and Rule 41 of the Federal Rules of Criminal Procedure to require the provider to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

3. I have been employed as a Special Agent for the Federal Bureau of Investigation ("FBI") since 2012. I am currently assigned to the cybercrime squad of the New Haven Division. I have received training and gained experience in, among other things, arrest procedures, search warrant applications, the execution of searches and seizures, computer crimes, and computer evidence identification, seizure and processing. I have personally participated in investigations related to financial fraud, cybercrimes, and cyber intrusions. In addition to my work experience, I have received specialized training in the field of computer crime investigation from the FBI and others.

4. I am an "investigative or law enforcement officer of the United States," within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 1343 (wire fraud), 1349 (conspiracy and attempt to commit wire fraud) and 1028 (identity theft) have been committed by as yet unidentified person or persons. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, or fruits of these crimes further described in Attachment B.

## JURISDICTION

6. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) &

(c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## **PROBABLE CAUSE**

7. Agents of the Federal Bureau of Investigation and the Internal Revenue Service ("IRS") are investigating unauthorized access to and transactions initiated from Citizens Bank accounts belonging to the Groton Board of Education in November and December 2018.

### *Groton Board of Education Bank Accounts*

8. The Town of Groton, Connecticut Board of Education ("BOE") maintains accounts with Citizens Bank. Two of these accounts are the Operating account and the Payroll account. These accounts are funded by the Town as needed for expenses incurred by the BOE.

9. On December 4, 2018, a Citizens Bank employee contacted a Town of Groton employee regarding a suspicious transfer from the BOE Operating account. This transfer was initiated November 15, 2018, and attempted to send $99,980.93 to a Vanguard Investments account in the name of ▮▮▮▮▮▮ (the "▮▮▮▮▮▮ Vanguard account"). The Town of Groton employee confirmed that this attempted transfer was not a legitimate one, and the transfer was reversed.

10. Following this, Town of Groton employees reviewed the transaction history for the BOE accounts and identified several other transactions that were not authorized. For the Operating account, they discovered five additional outbound transactions totaling an additional $77,879.42. These transactions included payments to a Wells Fargo credit card, a Citibank Sears credit card, and a Verizon Wireless account. In addition, on December 6, 2018, there was a transfer of $500,000 from the Operating account to the Payroll account.

11.     Review of the Payroll account identified multiple deposits and withdrawals of less than one dollar from vendors including Venmo, JP Morgan Chase, and Transfast. Based on my training and experience, I know that these "microtransactions" are used by vendors to confirm ownership of a bank account by the individual providing that bank account information to the vendor. The vendor will make small deposits to the bank account and require the individual using that bank account to tell the vendor the amounts of those deposits. Only someone with access to the bank account would know that information. The vendor then withdraws the amounts deposited.

12.     Review of the access logs for the Citizens Bank accounts identified that an account belonging to a retired Town of Groton employee was used to access the bank account multiple times between July 21, 2018 and December 11, 2018. According to other Town of Groton employees, that employee retired in April 2017. The (redacted) username for online access to this Citizens Bank account was dxxxxx6771.

*Use of Phone Number 540-390-1260*

13.     According to records provided by Vanguard, the ▮▮▮▮▮ account was created on November 13, 2018, two days before the attempted transfer from the BOE Operating account. The email address associated with the account was ▮▮▮▮▮@protonmail.com.[1] A telephone number associated with the ▮▮▮▮▮ Vanguard account was 540-390-1260. The ▮▮▮▮▮ Vanguard account was accessed from Internet Protocol (IP) address 107.152.104.239 on November 21, 2018 at 12:23 UTC (Coordinated Universal Time).

---

[1] Based on my training and experience, I know that Protonmail is an encrypted email service operated in Switzerland, which is generally beyond the reach of U.S. law enforcement.

4

According to records provided by Citizens Bank, the Groton BOE account was accessed through employee dxxxxx6771's credentials from that same IP address five minutes earlier, at 12:18 UTC. Generally speaking, an IP address is a numerical label assigned to each device connected to a computer network. Based on this similarity, I can conclude that the same device was likely used to log in to both the ▮▮▮▮▮ Vanguard account and the Groton BOE Citizens Bank account.

14. According to records provided by Transfast, the account linked to the Groton BOE Payroll account was in the name of ▮▮▮▮▮. The email address associated with the account was ▮▮▮▮▮@protonmail.com. The telephone number associated with the account was 540-390-1260.

15. According to records provided by TextNow, which services telephone number 540-390-1260, that number was subscribed to on November 1, 2018, by ▮▮▮▮▮, with an email address of ▮▮▮▮▮@gmail.com. Call records provided for this telephone number included the following, in part:

   a. On November 19, 2018, two calls were made to 888-273-4205. An Internet search identified this as a toll-free number for Vanguard.

   b. From January 19, 2019, to January 20, 2019, a total of 4 calls and 4 text messages were received from 866-322-4983. An Internet search identified this as a toll-free number for Citibank Sears credit cards.

   c. From January 21, 2019, to February 2, 2019, a total of 9 calls and 9 text messages were received from, and 1 call was placed to, 877-437-1981. An Internet search identified this as a toll-free number for Citibank Sears credit cards.

*Interview of* ▮▮▮▮▮

16.　On May 1, 2019, FBI Agents interviewed ▮▮▮▮▮, who resides in the State of Washington. ▮▮▮ advised that he had begun an online relationship with a woman named "Joyce Clowser" approximately two years ago. Clowser told ▮▮▮ that she was a banker for Capital One in Lynnwood, Washington, and offered to help ▮▮▮ with his finances. In order to facilitate her assistance, ▮▮▮ provided Clowser with copies of his identification documents and information. Despite his attempts to set up a voice or video call, ▮▮▮ has never heard or seen Clowser.

17.　Using ▮▮▮'s personal information, Clowser opened multiple bank accounts and credit cards in his name. This included a credit card that ▮▮▮ used to buy tires for his truck and a Navy Federal Credit Union account where Clowser deposited an additional $5,000 for ▮▮▮ to use. ▮▮▮ was unable to access this money and was advised by the bank that the account was frozen due to suspicious activity. ▮▮▮ also stated that Clowser created and used the email address ▮▮▮▮▮@protonmail.com to manage the accounts she opened in ▮▮▮'s name. ▮▮▮ stated that does not control accounts at Vanguard, Transfast, or any other financial institutions. According to ▮▮▮, Clowser recently told him that she was relocating to the United Kingdom and then to Africa in order to become a charity worker. She also suggested that ▮▮▮ allow her to invest his money in cryptocurrency, requested that he purchase cell phones for her, and offered to take over the management of ▮▮▮'s parents' finances.

18.　▮▮▮ believed he had heard the name "▮▮▮▮▮" at some point, but did not remember when or where.

*Correspondence Between Subject Account and ▮▮▮▮@gmail.com*

19.     United States Magistrate Judge Robert M. Spector authorized a search warrant on March 8, 2019, for the account ▮▮▮▮@gmail.com, held by Google, LLC. The following emails were among the documents provided by Google in response to the search warrant.

20.     On July 31, 2018, joyceclowser@gmail.com (the Subject Account), sent ▮▮▮▮@gmail.com an email with subject "Photo from [sunglasses emoji] [sunglasses emoji]." The body of this email contained a photograph of an Alabama nondriver identification card #103▮▮ along with a photograph of what appeared to be the back of a Connecticut driver's license.

21.     On August 8, 2018, ▮▮▮▮@gmail.com sent two emails to the Subject Account with subject "Photo from Kobby." The first email contained a photograph of a Connecticut driver's license #▮▮0609. The second email contained what appeared to be a photograph of the back of that same driver's license. This photo appeared to be the same photo, and had the same filename, as the photograph of the back of a Connecticut driver's license sent in the July 31 email referenced in the previous paragraph.

22.     On September 12, 2018, ▮▮▮▮@gmail.com sent an email to the Subject Account with subject "Document from Kobby" and body text "BANK STATEMENT." The email had an attached PDF file of a Citizens Bank account statement for an individual with an address in Georgia.

23.     Also on September 12, 2018, ▮▮▮▮@gmail.com sent an email to the Subject Account with subject "Photo from Kobby." The email had an attached file that appeared to be a photo of Pennsylvania driver's license #▮▮6613. The name and address on the

Pennsylvania license matched the name and address on the Citizen's Bank statement despite the fact that the Citizen's Bank statement listed a Georgia address. The font for the name and address appeared to have been altered in this image, as they did not match the other text on the license.

24. On November 17, 2018, ▇▇▇▇@gmail.com sent an email to the Subject Account with attached photographs of Washington state driver's license # ▇▇▇09M0 for ▇▇▇. The photographs included two pictures of the front of the license and one of what appeared to be the back. ▇▇▇@gmail.com

*[Handwritten margin note:] Based on my training, experience, and information learned during this investigation, I believe that the Subject Account is communicating with ▇▇▇@gmail.com concerning fraudulently-obtained identification documents in furtherance of the wire fraud and identity theft scheme and conspiracy. /MM/*

25. On April 22, 2019, I directed Google to preserve all records associated with joyceclowser@gmail.com.

## BACKGROUND ON EMAIL ACCOUNTS

26. In my training and experience, I have learned that Google provides a variety of on-line services, including electronic mail ("email") access, to the public. Google allows subscribers to obtain email accounts at the domain name (i.e., gmail.com), like the Subject Account. Subscribers obtain an account by registering with Gmail. During the registration process, Gmail asks subscribers to provide basic personal information. Therefore, the computers of Gmail are likely to contain stored electronic communications (including retrieved and unretrieved email for Gmail subscribers) and information concerning subscribers and their use of Gmail services, such as account access information, email transaction information, account application information, and IP addresses. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

27.     A Gmail subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Gmail. For example, a Gmail subscriber may engage in chat, audio, or video communications, store their web history, and keep a calendar with Gmail. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

28.     In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, I know that this information often provides clues to their identity, location or illicit activities.

29.     In my training and experience, I know that Google, which operates Gmail, stores any mail that is in a user's inbox or archive until a user himself or herself deletes those messages. Gmail does not automatically delete any messages in the user's inbox or archive. Any mail that is deleted from the inbox by the user moves to the trash folder, which is held for thirty days and then deleted. According to Google's data retention policy, items that are deleted are generally not fully removed from Google's servers for approximately two months, and can sometimes remain on its servers for up to six months.

30. In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of login (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

31. In my training and experience, perpetrators in wire fraud investigations can use and, in this investigation, did use, multiple e-mail accounts in the course of the scheme. In order to help identify the perpetrators and locate their whereabouts, the perpetrators may have used other associated accounts that shared the same browser cookie as the Subject Account. For example, a perpetrator may have used the Subject Account to perpetuate the scheme under investigation but, in the same browser session, logged into a separate Google account that would serve as a true or actual e-mail account for the perpetrator.

32. In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a

result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

33. As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the IP addresses from which users access the email account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive

and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

34. Based on my training and experience, I know that information concerning the Subject Account, as described in Attachment A, may be found on one or more computer servers owned and operated by the email provider. Only those portions of the servers containing information associated with the Subject Account will be searched. The search will be conducted by one or more persons knowledgeable about the computer servers, including employees or agents of the email providers.

35. Based on my training and experience, I also know that email service providers do not have the resources or the expertise to identify specific mail messages or other records relevant to a criminal investigation. Instead, it is the practice of the service providers to copy all email messages and other records from a specified account in response to a search warrant. Accordingly, the warrant requested by the Government encompasses all of the email messages and other records in the Subject Account.

36. Based on the forgoing, there is probable cause to believe that the Subject Account will contain evidence, as described in Attachment B, relating to a violation of Title 18, United States Code, Sections 1343 (wire fraud), 1349 (conspiracy and attempt to commit wire fraud) and 1028 (identity theft) in the account described. In particular, there is probable cause that the Subject Account will contain evidence relating to the Groton BOE thefts and the perpetrator(s) of those attacks. I also know based on my training and experience that individuals who are engaged in this type of criminal activity are likely to target more than one victim, so there is probable cause to believe that the Subject Account will contain evidence of similar offenses involving other victims.

37. There is also probable cause to believe that the Subject Account will contain evidence identifying the individuals involved. In particular, I know that email headers and session logs include information, such as IP addresses, which can be correlated with other information to determine who is using an email account at a particular time. I also know that information identifying the user of an email account can be found in the content of email messages, which may include direct references to the user's true identity or may include information that can be correlated with other information to establish the user's true identity. Finally, I know that email accounts include information about the individuals with whom the user of the accounts is communicating, and those individuals can provide information identifying the user of the accounts.

## CONCLUSION

38. Based on the foregoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Google, which will then compile the requested records at a time convenient to them, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

_____
MICHAEL MORRISON
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Subscribed and sworn to before me on May 16, 2019.

_____
THE HONORABLE ROBERT M. SPECTOR
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

**Property to Be Searched**

Information associated with Google Account **joyceclowser@gmail.com** (hereinafter and in Attachment B referred to as "Subject Account") that are in the possession of or under the control of the specified email service provider Google LLC, 1600 Amphitheatre Parkway, Mountain View California, (hereinafter and in Attachment B referred to as "Provider.").

# ATTACHMENT B

**Particular Things to be Seized**

**I.      Information to be disclosed by Google LLC (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A, for the period between July 21, 2018, and the present:

a.      The contents of all emails associated with the Subject Account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses (including but not limited to email and IP addresses) associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.      All records or other information regarding the identification of the Subject Account and location data associated with the Subject Account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, login IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.      All records or other information regarding the identification of the device used to access the Subject Account, including cellular site and sector information, GPS data, and cellular network identifying information (such as the IMSI, MSISDN, IMEI, MEID, or ESN);

      d.      Any and all content of services utilized by the Subject Account, including but not limited to Hangouts, Calendar, Search and Browsing History, YouTube, Android, Chrome Sync, Google Drive, and Location History;

      e.      A listing of all mobile applications downloaded to a device associated with the Subject Account;

      f.      All records or other information stored at any time by an individual using the account, including "chat" or other online communications, personal web pages, address books, contact and buddy lists, calendar data, pictures, and files; and

      g.      All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

      h.      Records identifying any other Google accounts that are linked to the Subject Account by machine cookies (meaning all Google accounts that logged into Google by the same machine as the Subject Account).

      i.      Records of subscriber change history associated with the Subject Account, including changes to subscriber information (including date, time, and IP address); and changes to the password, recovery email, or telephone number.

      j.      Records of any devices, including Android devices, that accessed the Subject Account.

II.     **Information to be seized by the government**

All information described above in Section 1 that constitutes fruits, contraband, evidence, or instrumentalities of violations of Title, 18 United States Code, Sections 1343 (wire fraud), 1349 (conspiracy and attempt to commit wire fraud) and 1028 (identity theft) between July 21, 2018, and the present, including, for the Subject Account listed on Attachment A, information pertaining to the following matters:

1.      All records, electronic mail, attachments, and related computer files that relate to violations of Title, 18 United States Code, Sections 1343 (wire fraud), 1349 (conspiracy and attempt to commit wire fraud) and 1028 (identity theft), including schemes to obtain and use, by fraudulent pretenses, access to bank accounts controlled by Groton Board of Education.

2.      Evidence indicating how and when the Subject Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner.

3.      Evidence indicating the identity of the person(s) who created or used the Subject Account, including records that help reveal the whereabouts of such person(s).

4.      Evidence indicating the identity of the person(s) who communicated with the Account about matters relating to violations of Title, 18 United States Code, Sections 1343 (wire fraud), 1349 (conspiracy and attempt to commit wire fraud) and 1028 (identity theft), including schemes to obtain and use access to bank accounts controlled by Groton Board of Education.